[No. S073975. Aug. 5, 1999.]

PREFERRED RISK MUTUAL INSURANCE COMPANY, Plaintiff and Appellant, v.
REO REISWIG et al., Defendants and Respondents.

## COUNSEL

Law Offices of Lori B. Feldman, Lori B. Feldman; Murchison & Cumming and Edmund G. Farrell III for Plaintiff and Appellant.

Law Offices of Randall B. Hamud and Randall B. Hamud as Amici Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Sandra J. Smith and John A. Taylor, Jr., for California Medical Association, California Dental Association and California Health-care Association as Amici Curiae on behalf of Plaintiff and Appellant.

Bonne, Bridges, Mueller, O'Keefe & Nichols and Mark B. Connely for Defendants and Respondents.

## OPINION

**CHIN, J.**—Code of Civil Procedure section 364, subdivision (a),[1] part of the Medical Injury Compensation Reform Act (MICRA), requires plaintiffs to give defendants 90 days' notice of intent to sue for actions "based upon" defendants' professional negligence. Section 364, subdivision (d), tolls the "applicable statute of limitations" governing the negligence action for 90 days following proper statutory notice. We must decide whether subdivision

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

(d) applies to an equitable indemnity action that is based on professional negligence, but governed by a non-MICRA statute of limitations. We conclude it does, and we reverse the Court of Appeal's judgment.

## FACTS

■ This appeal is from a judgment of dismissal entered after the trial court sustained a demurrer without leave to amend. Under well-settled law, therefore, we assume the truth of all properly pleaded material allegations. (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 702 [263 Cal.Rptr. 119, 780 P.2d 349].)

On April 4, 1993, Rebekka Pratte (Pratte) was injured when her hand was slammed in the door of a van owned by the First Church of God—Santa Maria, Inc. (the Church). She was treated by defendant doctors Reo Reiswig, Karen S. Kolba, and C. Baring Farmer (the doctors). After treatment she developed a serious condition known as complex regional pain syndrome.

Pratte sued the Church, which was insured by plaintiff Preferred Risk Mutual Insurance Company (Preferred Risk). On January 24, 1996, Preferred Risk paid the $1 million policy limit to Pratte in exchange for a release of all claims against the Church. On July 2, 1996, Pratte sued Doctors Reiswig and Farmer for malpractice. Because the action was "based upon" her physicians' alleged negligence, it was governed by MICRA's statutory provisions, including section 364, which governs the notice of intention and commencement of professional negligence actions. (§ 364, subds. (a), (d).) Pratte followed those statutes in pursuing her claim.

On January 16, 1997, Preferred Risk served Doctors Reiswig and Kolba with section 364, subdivision (a), notices of intent to sue them for malpractice. On February 19, 1997, it served a similar notice on Dr. Farmer. On April 10, 1997, Preferred Risk filed a complaint in subrogation to the Church's right of equitable indemnity against all three doctors, essentially claiming that they should indemnify it for the amount it spent to settle Pratte's action against the Church because their malpractice caused Pratte's injuries.

The doctors demurred to the complaint on the grounds that it did not state a subrogation cause of action and was barred by the general one-year personal injury statute of limitations in section 340, subdivision (3). They asserted that, because section 340, subdivision (3), applies to general tort actions and is not part of the MICRA statutory scheme, Preferred Risk could

not seek protection under the MICRA 90-day tolling provision for actions "based upon" professional negligence. (§ 364, subd. (d).) The trial court sustained the demurrer on statute of limitations grounds, entering judgment of dismissal for defendants. The Court of Appeal affirmed the judgment. We granted review to decide whether section 364, subdivision (d), applies to Preferred Risk's equitable indemnity action.

## BACKGROUND

A person whose negligence causes injury that a physician's malpractice aggravates may seek equitable indemnity from the physician. (*Smith* v. *Parks Manor* (1987) 197 Cal.App.3d 872, 878 [243 Cal.Rptr. 256].) The equitable indemnity cause of action does not accrue until the person pays the injured third party's claim. (*People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 757 [163 Cal.Rptr. 585, 608 P.2d 673].) A liability insurer that pays damages to a third party on behalf of an insured tortfeasor stands in the same position as its insured with respect to the right to recover against other tortfeasors on a comparative fault basis. (*Truck Ins. Exchange* v. *Superior Court* (1997) 60 Cal.App.4th 342, 350 [70 Cal.Rptr.2d 255].)

Preferred Risk paid Pratte on January 24, 1996. Its indemnity cause of action accrued on that date for purposes of commencing the statute of limitations, because one is injured by another's wrongful act when one pays more than one's proper share of a settlement to a plaintiff. The parties agree that section 340, subdivision (3), which governs all general tort actions, governs the equitable indemnity action. That section imposes a one-year limitations period for "[a]n action . . . for injury to . . . one caused by the wrongful act or neglect of another . . . ." Thus, Preferred Risk was required to file its complaint by January 24, 1997, unless its action was tolled or extended by law.[2]

Section 364, subdivision (a), provides that "[n]o action based upon the health care provider's professional negligence may be commenced unless the

---

[2]Because its notice of intent to sue Dr. Farmer was served after the one-year limitations period of section 340, subdivision (3), expired, Preferred Risk is not appealing the sustaining of the demurrer as it applies to its action against Dr. Farmer.

In the Court of Appeal, Preferred Risk asserted as an alternative argument that the one-year MICRA statute of limitations in section 340.5 applied to its action, which automatically fell under the protection of section 364, subdivision (d), as a derivative MICRA lawsuit. The Court of Appeal concluded that section 340.5 does not govern indemnity actions, and in its petition for review and opening brief, Preferred Risk conceded the point. Prior to oral argument in this court, we asked the parties for supplemental briefing on the question whether section 340.5 had any application to this case. In light of the supplemental briefing and our own review of the question, we conclude the statute has no application to Preferred Risk's indemnity action.

defendant has been given at least 90 days' prior notice of the intention to commence the action." Failure to comply with the 90-day notice provision does not invalidate court proceedings and is not jurisdictional, although it may subject a plaintiff's attorney to State Bar disciplinary proceedings. (§ 365.) Section 364, subdivision (d), states: "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." (§ 364, subd. (d).) Preferred Risk filed its complaint on April 10, 1997, more than one year after the indemnity cause of action accrued on January 24, 1996. The action is time-barred unless tolled under section 364, subdivision (d), for 90 days after January 16, 1997, when Preferred Risk served notice of intent to sue on Doctors Reiswig and Kolba.

The Court of Appeal concluded that the 90-day tolling provision of section 364, subdivision (d), does not apply to equitable indemnity claims. The court did acknowledge that, because section 364, subdivision (d), tolls "the *applicable* statute of limitations" and is not limited to MICRA statute of limitations provisions, it arguably could apply even to non-MICRA limitations periods, as it has in other cases. (See, e.g., *Anson* v. *County of Merced* (1988) 202 Cal.App.3d 1195, 1204-1205 [249 Cal.Rptr. 457] (*Anson*) [§ 364 notice extends limitations period under Gov. Code, § 945.6].) The court concluded, however, that because section 364 applies only to an "action based upon the health care provider's professional negligence," and defines professional negligence as a "negligent act . . . by a health care provider in the rendering of professional services, which . . . is the proximate cause of a personal injury or wrongful death . . ." (§ 364, subds. (a), (f)(2)), the statute applies only to claims by a patient or a patient's heirs, and not to parties seeking indemnity for the same injury. We conclude the Court of Appeal erred.

## DISCUSSION

As we have observed, the Legislature enacted MICRA in 1975 in response to rapidly increasing premiums for medical malpractice insurance. (*Delaney* v. *Baker* (1999) 20 Cal.4th 23, 33-34 [82 Cal.Rptr.2d 610, 971 P.2d 986]; *Woods* v. *Young* (1991) 53 Cal.3d 315, 319 [279 Cal.Rptr. 613, 807 P.2d 455] (*Woods*).) The Legislature viewed MICRA as " 'an interrelated legislative scheme . . . to deal specifically with all medical malpractice claims.' " (*Woods, supra,* 53 Cal.3d at p. 324.) ■ The purpose of the notice of intent to sue and the 90-day tolling period of section 364 was to decrease the number of actions premised on professional negligence by establishing a procedure to encourage the parties to negotiate " 'outside the structure and atmosphere of the formal litigation process.' " (*Woods, supra,* 53 Cal.3d at p.

320.) We have held that the tolling period of section 364, subdivision (d), applies to those injuries governed by the MICRA statute of limitations under section 340.5. (*Woods, supra,* 53 Cal.3d at p. 327; *Russell* v. *Stanford University Hospital* (1997) 15 Cal.4th 783, 789 [64 Cal.Rptr.2d 97, 937 P.2d 640] (*Russell*) [§ 364 tolls three-year discovery period of § 340.5].) ▮ The cases agree that MICRA provisions should be construed liberally in order to promote the legislative interest in negotiated resolution of medical malpractice disputes and to reduce malpractice insurance premiums. (*Russell, supra,* 15 Cal.4th at p. 790; see *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 363-364 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233].)

▮ Notwithstanding the clear policy behind section 364, to encourage settlements and lower insurance premiums, the doctors assert that the tolling provision of section 364, subdivision (d), does not apply to equitable indemnity actions because they are not governed by MICRA statute of limitations provisions. Instead, equitable indemnity actions are simple common law tort actions filed to regain money lost by another's negligence, with the general tort statute of limitations under section 340, subdivision (3), alone applying to the claims. The doctors reason that, because the actions seek to recover economic loss, and because section 340, subdivision (3), a non-MICRA provision, governs them, the tolling provision of section 364, subdivision (d), cannot protect them.

Our cases implicitly reject the doctors' contention. We have held that the MICRA provisions may apply to equitable indemnity actions. (*Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 114 [32 Cal.Rptr.2d 263, 876 P.2d 1062] (*Western Steamship*).) ▮ *Western Steamship* held that Civil Code section 3333.2, subdivision (b), which imposes a statutory cap on noneconomic damages in medical malpractice claims, limits those damages to $250,000 in all MICRA actions, including derivative actions for partial equitable indemnity brought by a concurrent tortfeasor. (*Western Steamship, supra,* 8 Cal.4th at p. 104.)

*Western Steamship* involved the doctrine of equitable indemnity in the MICRA context and Civil Code section 3333.2. Subdivision (a) of that section provides: "In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses . . . ." Subdivision (b) of that section limits noneconomic damages to $250,000. *Western Steamship* rejected the argument that an action for equitable indemnity is distinct from its related medical malpractice suit that MICRA governs because it seeks only economic damages resulting from the malpractice settlement payment. (*Western*

*Steamship, supra,* 8 Cal.4th at p. 107.) After examining the equitable indemnity doctrine, however, and noting that it simply involves an apportionment of damages among tortfeasors, we held that categorizing indemnity actions as involving only economic factors would "misperceive[] the proper scope of the court's inquiry in cases of equitable indemnification." (*Ibid.*) We observed that MICRA "reflects a strong public policy to contain the costs of malpractice insurance by controlling or redistributing liability for damages, thereby maximizing the availability of medical services to meet the state's health care needs. [Citation.] . . . Exempting indemnity actions from the $250,000 limit would threaten not only this goal but also the broader purpose of MICRA by resurrecting the pre-MICRA instability associated with unlimited noneconomic damages and increasing the overall cost of malpractice insurance to account for these larger recoveries. [Citations.]" (*Id.* at p. 112.) Thus, *Western Steamship* concluded that because indemnity cannot occur without liability, the MICRA limitation on damages applied with equal force to an equitable indemnity action based on an original professional malpractice lawsuit. (*Id.* at p. 114.)

The doctors attempt to distinguish *Western Steamship* on the ground that we specifically differentiated between substantive questions involving MICRA and simple procedural ones invoking statutes of limitations and other limitations on liability available to defendants in indemnity actions. (*Western Steamship, supra,* 8 Cal.4th at pp. 114-115.) Like the Court of Appeal, the doctors rely on our statement in *Western Steamship* separating MICRA's substantive and procedural provisions: "[F]or certain procedural purposes, such as statutes of limitations, an indemnity claim is an independent action. [Citation.] As to matters of substantive law, however, it is wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available." (*Ibid.,* fn. omitted.)

Although *Western Steamship* distinguished between substantive and procedural statutes to facilitate its analysis, the comparison has little force in this case. The doctors fail to acknowledge that *Western Steamship* relied on an out-of-state case that construed a medical malpractice statute of limitations to apply to contribution actions against health care providers. (*Western Steamship, supra,* 8 Cal.4th at p. 112 [determined that Civ. Code, § 3333.2 includes actions for equitable indemnity in order to effectuate goal of reducing insurance premiums], citing *Hayes* v. *Mercy Hosp. and Medical Center* (1990) 136 Ill.2d 450 [145 Ill.Dec. 894, 557 N.E.2d 873, 876-877, 88 A.L.R.4th 321].) Moreover, Civil Code section 3333.2, the statute at issue in *Western Steamship,* applies in actions "against a health care provider based on professional negligence." This language is virtually identical to that of section 364, subdivision (a), which applies to actions "based upon the health

care provider's professional negligence." We can reasonably infer, therefore, that the Legislature intended the parallel language of the two MICRA provisions to be construed identically. Thus, although *Western Steamship* does not specifically resolve the question whether the tolling provisions of section 364, subdivision (d), should apply to equitable indemnity actions based on medical malpractice actions, it helps us understand the statute's application in the non-MICRA equitable indemnity context.

The doctors also assert that, even if we assume *Western Steamship* does not preclude application of section 364, subdivision (d), to Preferred Risk's equitable indemnity action, a literal statutory interpretation does, because the indemnity was not, in the language of the statute, "based upon" the doctors' negligence. (§ 364, subd. (a).) In other words, Preferred Risk itself "did not suffer a personal injury or wrongful death, nor did the Church of God—in whose shoes Preferred Risk stands." Thus, because Preferred Risk's equitable indemnity action is not "based upon" professional negligence, its notice of intent to sue the doctors does not trigger the tolling provision of section 364, subdivision (d).

The doctors' contention does not withstand scrutiny. *Western Steamship* recognized that, although equitable indemnity is based upon restitution, its restitutionary nature does not preclude the courts from apportioning liability among multiple tortfeasors on a comparative negligence basis. (*Western Steamship, supra,* 8 Cal.4th at pp. 108-109.) Indeed, *Western Steamship* assumed that an action for partial equitable indemnity may be based upon professional negligence and may indeed be subject to MICRA's limit on noneconomic damages. (*Id.* at p. 111.) Moreover, although we have never attempted to define for all purposes the phrase "based upon" professional negligence, we have recognized that, in deciding whether an action is "based upon" professional negligence, the test is whether it flows or originates from a healthcare provider's negligent act or omission. (See *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181, 187-188, fn. 3, 192 [10 Cal.Rptr.2d 208, 832 P.2d 924] [court must examine allegations of complaint to determine whether plaintiff's injury is related to manner in which professional services were rendered].)

■ The courts have also rejected a similar contention in another non-MICRA statute of limitations context. (*Anson, supra,* 202 Cal.App.3d at pp. 1204-1205.) *Anson* held that the section 364, subdivision (d), tolling provision extended the six-month statute of limitations period of Government Code section 945.6, which governs actions against public entities. Citing section 364, subdivision (d), *Anson* observed the statute specifically states that, if a notice of intention is " 'served within 90 days of the expiration of

*the applicable statute of limitations,*' " the limitations period is extended 90 days from service of notice. (*Anson, supra,* 202 Cal.App.3d at p. 1204, italics added by *Anson.*) "Had the Legislature intended the 90-day extension only to apply to the 1-year statute of limitations of Code of Civil Procedure section 340.5, it could have so stated. Instead, it used the words 'the applicable statute of limitations.' [¶] 'Government Code section 945.6 is a statute of limitation.' [Citation.] Since we have held Government Code section 945.6 to be the applicable statute of limitations in this case, a plain reading of the language of subdivision (d) of Code of Civil Procedure section 364 extends the six-month period by ninety days from service of the notice of intention to institute legal action. As this court has explained, courts are 'required to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citation.]" (*Anson, supra,* 202 Cal.App.3d at pp. 1204-1205; see *Wurts* v. *County of Fresno* (1996) 44 Cal.App.4th 380, 385 [51 Cal.Rptr.2d 689] [§ 364's purpose is not merely procedural, and statute applies to other non-MICRA actions].)

The doctors attempt to distinguish *Anson* on the ground that it involved a negligence action against the governmental entity that employed the negligent physicians and was therefore "based upon" the health care provider's negligence; it was not an equitable indemnity action like Preferred Risk's, which is "based upon" settling the underlying negligence action. The doctors rely on a case holding that section 364, subdivision (d), does not apply to battery actions because those actions are not "based upon" professional negligence. (*Noble* v. *Superior Court* (1987) 191 Cal.App.3d 1189, 1192-1193 [237 Cal.Rptr. 38] [§ 364 does not apply to battery action, which is not a "professional negligence" action].) As we explained above, however, equitable indemnity actions that flow from professional negligence actions (as opposed to unrelated tort actions) are "based upon" professional negligence and may be subject to the tolling provision of section 364, subdivision (d). We reject the doctors' contention on that basis.

CONCLUSION

We conclude that section 364, subdivision (d), which tolls for 90 days the limitations period for an action based upon a health care provider's professional negligence, applies to equitable indemnity actions based upon professional negligence and governed by separate statutes of limitation, including section 340, subdivision (3). Had the Legislature intended the tolling provision of section 364, subdivision (d), to apply only to section 340.5, rather than the more general "applicable statute of limitations," it could easily have so stated. By applying section 364, subdivision (d), to cases based upon a health care provider's professional negligence, including derivative claims for equitable indemnity that follow settlement of the original action, we

further the legislative purpose of the 90-day tolling period, and MICRA in general, to give doctors and their insurers an opportunity to negotiate with prospective plaintiffs and settle derivative claims without unnecessary litigation. (See *Woods, supra,* 53 Cal.3d at p. 320.) Accordingly, we reverse the Court of Appeal's judgment and remand for proceedings consistent with our conclusion.

George, C. J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—At issue here is the applicability of Code of Civil Procedure section 364,[1] a provision of the Medical Injury Compensation Reform Act (MICRA). This provision requires a plaintiff in an action against a health care provider based on the provider's professional negligence to give 90 days' notice of intent to sue, and it extends the "applicable" statute of limitations for 90 days following the service of such notice. I agree with the majority that section 364's notice requirement and extension provision apply to this case, which pertains to a plaintiff insurer's action for indemnity against two physicians, whose alleged professional negligence aggravated the injuries of a person involved in an accident with plaintiff's insured.

I disagree with the majority, however, that the applicable statute of limitations here is section 340, subdivision (3), which imposes a one-year limitations period for "[a]n action . . . for injury to . . . one caused by the wrongful act or neglect of another . . . ." (See maj. opn., *ante*, at pp. 212-213 & fn. 2.) In my view, the correct statute of limitations is section 340.5, which provides for, as applicable, either a three-year or a one-year period of limitations in actions "for injury or death against a health care provider based upon such person's alleged professional negligence."

I

In 1993, Rebekka Pratte's hand was slammed in the door of a van owned by the First Church of God—Santa Maria, Inc. (the Church). After Doctors Reo Reiswig and Karen S. Kolba treated the injury, Pratte developed a serious condition known as "complex regional pain syndrome." She sued the Church, which was insured by plaintiff Preferred Risk Mutual Insurance Company. On January 24, 1996, plaintiff insurer paid Pratte the policy limit of $1 million in exchange for a release of claims against the Church. On January 16, 1997, plaintiff insurer served Doctors Reiswig and Kolba with section 364 notices of intent to sue, and on April 10, 1997, it filed a complaint in subrogation to the Church's right of equitable indemnity

---

[1]Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

against both physicians. The complaint alleged that defendant physicians had aggravated Pratte's injury by negligently treating her hand, and it sought indemnification for the money plaintiff had paid to Pratte in a settlement of her lawsuit against the Church.

Defendants demurred, claiming, as relevant here, that the complaint was barred by the one-year statute of limitations of section 340, subdivision (3). The trial court sustained the demurrer without leave to amend, and the Court of Appeal affirmed the judgment.

## II

Section 340.5 provides: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury *or* one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Italics added.) Thus, section 340.5 applies to any complaint that satisfies these three requirements: (1) the action must be "against a health care provider," for (2) "injury or death," based on (3) the health care provider's "alleged professional negligence." Here, plaintiff insurer's action against defendant physicians for equitable indemnity meets each of these criteria.

First, plaintiff insurer's action against defendant physicians is "against a health care provider." (§ 340.5.) Subdivision (1) of section 340.5 provides an explicit definition of the term "[h]ealth care provider." The majority and defendant physicians do not dispute that defendants fall within this definition.

Second, plaintiff insurer's action is for "injury." (§ 340.5.) More specifically, it is for the financial injury that the Church suffered when plaintiff paid, on the Church's behalf, $1 million to accident victim Pratte to compensate her. Implicit in the majority's determination that the applicable statute of limitations is section 340, subdivision (3), which imposes a one-year limitations period on actions for *"injury . . .* caused by the wrongful act or neglect of another" (italics added), is a finding that the action here is for "injury."

Third, the action is "based upon" the health care provider's "alleged professional negligence." (§ 340.5.) Plaintiff alleged that accident victim Pratte was injured in an accident involving the Church, which was insured by plaintiff; and that as Pratte's health care providers, both defendant

physicians committed acts of professional negligence that aggravated Pratte's injury, as a result of which plaintiff insurer paid Pratte more in damages than it would have been obligated to pay if the physicians' negligent acts had not occurred. Thus, the action squarely falls within section 340.5's requirement that it be "based upon" defendant health care providers' professional negligence. The majority concedes as much by concluding that plaintiff's action falls within the notice requirement and the extension provision of section 364, which (like the third requirement of section 340.5) apply only to actions "based upon the health care provider's professional negligence."

Instructive here is our decision in *Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100 [32 Cal.Rptr.2d 263, 876 P.2d 1062]. That case involved another provision of MICRA, Civil Code section 3333.2, which imposes a limitation of $250,000 on damages in "any action for injury against a health care provider based on professional negligence . . . ." That provision, like section 340.5 here, requires (1) an action against a health care provider, that is for (2) injury, and is (3) based on professional negligence. In *Western Steamship*, as in this case, the plaintiff, after paying damages to a third party for injuries caused by the plaintiff's negligence, filed an action for equitable indemnity against the health care provider·that had negligently treated the injured third party. This court determined that Civil Code section 3333.2's $250,000 limitation on damages applied to the plaintiff's action for equitable indemnity. If, as we held in *Western Steamship,* equitable indemnity actions satisfy the three requirements of Civil Code section 3333.2, they must also satisfy the three requirements of section 340.5, for, as I have just pointed out, the requirements of the two statutes are virtually identical.

Although the majority and I differ on the applicable statute of limitations here—whether it is section 340, subdivision (3), as the majority concludes, or section 340.5, as I conclude—the result is the same. Plaintiff's indemnity claim accrued when plaintiff "suffered actual loss through payment." (*People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 751-752 [163 Cal.Rptr. 585, 608 P.2d 673].) Under section 340, subdivision (3), plaintiff insurer had one year from the date of injury to file its complaint. Under section 340.5, plaintiff had one year from the discovery of the injury *or* three years from the date of the injury to file its complaint. Irrespective of which statute of limitations is applied here, plaintiff insurer had one year from the date of its payment to Pratte (*People* ex rel. *Dept. of Transportation* v. *Superior Court, supra,* 26 Cal.3d 744) to file its action for equitable indemnity, and as the majority concludes, the complaint was timely filed.

In other cases, however, the majority's conclusion that section 340.5 has no bearing on actions for equitable indemnity may have more serious consequences, especially in the application of tolling provisions.

The one-year statute of limitations in subdivision (3) of section 340 is subject to many tolling provisions. For example, the statute is tolled when the defendant is absent from the state (§ 351); when the plaintiff is a minor (§ 352); when the plaintiff is insane (*ibid.*); when the plaintiff is imprisoned on a criminal charge for a term less than life (§ 352.1); when the plaintiff is represented "by an attorney over whose practice a court of this state has assumed jurisdiction pursuant to Section 6180 or Section 6190 of the Business and Professions Code" (§ 353.1); when the plaintiff is under a disability caused by a state of war (§ 354); when a timely action is filed, but a judgment for the plaintiff is reversed on grounds other than the merits (§ 355); when a person entitled to bring an action dies (§ 366.1); or in any case in which the doctrine of equitable tolling applies (see generally, *Addison* v. *State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941]; *Elkins* v. *Derby* (1974) 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839]; *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399 [154 P.2d 399]; *Aerojet General Corp.* v. *Superior Court* (1986) 177 Cal.App.3d 950, 954 [223 Cal.Rptr. 249]).

None of these tolling provisions can extend the maximum three-year limitations period of section 340.5, enacted as part of MICRA in 1975. (*Belton* v. *Bowers Ambulance Service* (1999) 20 Cal.4th 928, 931 [86 Cal.Rptr.2d 107, 978 P.2d 591].) In contrast to those broad tolling provisions applicable to subdivision (3) of section 340, section 340.5 permits a tolling of its three-year limitations period only for fraud, intentional concealment, the presence of nontherapeutic and nondiagnostic foreign bodies, or, in certain limited circumstances, when the plaintiff is a child under the age of 8. (Stats. 1975, 2d Ex. Sess. 1975-1976, ch. 1, § 25, p. 3968.) As we explained in *Young* v. *Haines* (1986) 41 Cal.3d 883, 900 [226 Cal.Rptr. 547, 718 P.2d 909]: "MICRA established a sharply reduced statute of limitations for malpractice plaintiffs. Section 340.5 as originally enacted in 1970 contained a tolling provision which was intended to retain much of the liberality of the common law rule. [Citations.] The 1975 MICRA version of the statute, by contrast, was intended to work 'substantial changes' (*Brown* v. *Bleiberg* [(1982)] 32 Cal.3d [426,] 432 [186 Cal.Rptr.2d 228, 651 P.2d 815]) in the limitation period. Significant among these changes was the restriction of the tolling provisions for medical malpractice actions." Here, the majority's conclusion that section 340.5 is inapplicable to equitable indemnity actions against health care providers removes the Legislature's "restriction on the tolling provisions for medical malpractice actions." (*Young* v. *Haines, supra*, 41 Cal.3d at p. 900.)

**MOSK, J.**—I dissent.

I agree with the majority that the time for bringing this action is governed by Code of Civil Procedure section 340, subdivision (3), the one-year limitations period for most torts, and not by the time for bringing actions under the Medical Injury Compensation Reform Act (MICRA).[1] (See § 340.5 [time for commencement of action "shall be three years after the date of injury or one year after the plaintiff discovers . . . the injury"].) I also agree that the injury in this action for equitable indemnity action occurred when Preferred Risk Mutual Insurance Company (Preferred Risk) paid money to settle the underlying negligence action, not when the malpractice took place—over three years earlier.

I disagree, however, that we may import the notice provision under MICRA (§ 364) to toll the limitations period. As a majority determined in *Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 114 [32 Cal.Rptr.2d 263, 876 P.2d 1062], "for certain procedural purposes, *such as statutes of limitations*, an indemnity claim is an independent action." (Italics added.) In my view, it is illogical to conclude that one MICRA statute, section 345.1, does *not* apply to establish the limitations period in this case but then to require notice under another MICRA statute, section 364, and apply its 90-day tolling provision to extend the time for filing an action beyond the limits for other equitable indemnity claims.

Like the Court of Appeal, I conclude that section 364 does not apply to a case which does not involve a claim for medical malpractice by an injured individual. I would adopt its analysis, in part, as set forth below.

"Section 364 applies to an 'action based upon the health care provider's professional negligence.' (§ 364, subd. (a).) 'Professional negligence' is defined as a 'negligent act or omission to act by a health care provider in the rendering of professional services, which . . . is the proximate cause of a personal injury or wrongful death . . . .' (§ 364, subd. (f)(2).) In other words, section 364 applies to claims by a patient who has been injured by a practitioner's medical malpractice, or that patient's heirs in a wrongful death case.

"Preferred Risk argues that such an interpretation defeats the purpose of section 364, which is to 'decrease the number of medical malpractice actions filed by establishing a procedure that encourages parties to negotiate "outside the structure and atmosphere of the formal litigation process." ' (*Woods*

---

[1]Unless otherwise indicated, statutory references are to the Code of Civil Procedure.

v. *Young* (1991) 53 Cal.3d 315, 320 [279 Cal.Rptr. 613, 807 P.2d 455].) The drafters of MICRA believed that a 90-day notice period would give doctors accused of professional negligence and their insurers an opportunity to negotiate with prospective plaintiffs and settle claims without costly litigation. (*Id.* at pp. 320-326.)

"These goals will not be met by extending the tolling provisions of section 364 to joint tortfeasors who file a claim for equitable indemnity against an allegedly negligent physician. Medical malpractice claims typically involve complex factual issues. If the 90-day period is effective in reducing the number of malpractice lawsuits, it will only be in those rare cases where liability is relatively clear one way or another. An indemnity action which involves multiple tortfeasors and requires the apportionment of fault between a negligent actor and a physician who treats the injuries flowing from that negligence is unlikely to be resolved in 90 days.

"Moreover, it will be a rare situation in which the party injured by medical malpractice will not file a direct claim against a negligent physician. In this case, for example, [the insured] filed a lawsuit against two of the respondent doctors on July 2, 1996 [more than six months before Preferred Risk settled the case]. [Fn. omitted.] Notices under section 364 are filed by the injured party in such cases, making further notice by joint tortfeasors both unnecessary and ineffective in promoting early settlement."

"[The majority opinion in] *Western Steamship* was careful to distinguish between the substantive and procedural aspects of MICRA. '[F]or certain procedural purposes, such as statutes of limitations, an indemnity claim is an independent action. . . . As to matters of substantive law, however, it is wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available.' (8 Cal.4th at pp. 114-115.)

"Section 364, unlike Civil Code section 3333.2, is a procedural statute. It does not thwart the stated goals of MICRA to limit its tolling provision to direct claims of medical malpractice by an injured patient or that patient's heir. The Legislature specifically reduced the limitations period for medical malpractice actions when it enacted MICRA. To extend the applicable limitations period in an action for equitable indemnity which seeks apportionment based on a party's alleged medical malpractice 'is inconsistent with the spirit' of that statutory scheme. (*Noble* v. *Superior Court* (1987) 191 Cal.App.3d 1189 [237 Cal.Rptr. 38]. 1193.)"

Ironically, although the majority assert that the application of MICRA procedural requirements to this equitable indemnity action will further the

policies underlying MICRA, respondent doctors strongly urge a contrary result. They observe that in a case like this, when a patient has already sued, section 364 notice by the insurer in an equitable indemnity action is not only duplicative, it is meaningless; under no likely circumstances will it advance any relevant policy behind MICRA.

For these reasons, I would affirm the judgment of the Court of Appeal.