[No. G042107. Fourth Dist., Div. Three. Mar. 19, 2010.]

FELICIA BLAKELY, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1448

COUNSEL

Doreen Boxer, Public Defender, and Pamela P. King, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Michael A. Ramos, District Attorney, Grover D. Merritt and Grace B. Parsons, Deputy District Attorneys, for Real Party in Interest.

OPINION

**IKOLA, J.**—Petitioner Felicia Blakely challenges the determination of the Board of Parole Hearings (Board) that she is a mentally disordered offender (MDO). (See Pen. Code, § 2960 et seq.; MDO Act.)[1] She contends California's Department of Corrections and Rehabilitation (CDCR) violated the mandatory deadline for MDO evaluations and certification: i.e., "[p]rior to release on parole . . . ." (§ 2962, subd. (d)(1).)

We agree. Parallel language in the MDO Act—" 'Prior to the termination of a commitment' "—sets a mandatory deadline for filing recommitment petitions. (*People v. Allen* (2007) 42 Cal.4th 91, 102 [64 Cal.Rptr.3d 124, 164 P.3d 557] (*Allen*).) The phrase "Prior to release on parole" should be read similarly. (§ 2962, subd. (d)(1).) Petitioner's MDO evaluations and certification occurred while she was still in custody, but after her parole release date. The Board's MDO determination was based on these untimely acts and thus must be " 'invalidat[ed].' " (*Allen*, at p. 102.) We note, however, mentally disordered persons may receive custodial treatment pursuant to other statutes.

FACTS

Petitioner was granted probation in January 2008 after pleading guilty to resisting a police officer and misdemeanor vandalism. Her probation conditions required her to seek psychiatric treatment and "comply with all mental health professionals." The court later revoked petitioner's probation and sentenced her to 16 months in state prison.

Petitioner was incarcerated in state prison on September 3, 2008. The next day, CDCR calculated petitioner should be released on parole due to various custody credits on September 3, 2008—the same day she was incarcerated. Petitioner was not released.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

While petitioner was still in custody, prison psychologists gave mental health evaluations to her on September 8 and 9, 2008. Also on September 9, CDCR performed a "file audit" that confirmed petitioner should have been released on parole on September 3.

On September 10, 2008, a CDCR chief psychiatrist certified to the Board that petitioner met the MDO commitment criteria. (See § 2962, subd. (d)(1).) That same day, the Board held a parole hearing. It released petitioner on parole for three years effective September 3, 2008, with the condition she receive MDO treatment from the State Department of Mental Health. Petitioner was transported to Patton State Hospital the next day.

The Board held another hearing in October 2008, at which it determined petitioner met the MDO criteria. (See § 2966, subd. (a).) It rejected petitioner's objection that she was evaluated and certified after her parole date.

In January 2009 petitioner filed a trial court petition challenging the Board's MDO determination. (See § 2966, subd. (b).) She later filed a "motion in limine to grant petition," asserting she could not be certified as an MDO after her parole date. The court denied the motion after an April 2009 hearing. It excused the untimeliness of the psychological evaluations and MDO certification as " 'good faith' " errors due to the uncertainty concerning her custody credits.

## DISCUSSION

*The MDO Act*

■ The MDO Act requires CDCR to "evaluate each prisoner for severe mental disorders during the first year of the prisoner's sentence" and "provide [MDO prisoners] with an appropriate level of mental health treatment while in prison and when returned to the community." (§ 2960.) Accordingly, "[a]s a condition of parole, a prisoner may be designated and civilly committed as an MDO for involuntary treatment of a 'severe mental disorder' if certain conditions are met." (*Allen, supra*, 42 Cal.4th at p. 99, fn. omitted.)

These conditions include mental health evaluations and certification. Section 2962, subdivision (d)(1) sets forth as MDO criteria: "Prior to release on parole, the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health have evaluated the prisoner at a [CDCR] facility . . . and a chief psychiatrist of the [CDCR] has certified to the [Board]" that the prisoner meets various other conditions. These other conditions are that "the prisoner has a severe mental disorder" that "is not in remission, or cannot be kept in remission without

treatment," and which "was one of the causes or was an aggravating factor in the prisoner's criminal behavior"; "the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day"; and "by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others." (*Ibid.*)

■ The prisoner is entitled to a Board hearing to challenge an MDO certification. (§ 2966, subd. (a).) After the Board determines the MDO criteria are met, the prisoner may petition the superior court for a jury trial to determine de novo whether he or she meets the MDO criteria. (§ 2966, subd. (b).)

If the prisoner's mental disorder goes into remission during parole and can be kept in remission, MDO treatment must be discontinued. (§ 2968.) Otherwise, "[n]ot later than 180 days prior to the termination of parole," the district attorney may petition to extend treatment for one year beyond the final parole termination date. (§ 2970.)

Recommitment is available after the one-year extension. "Prior to the termination of a commitment under this section, a petition for recommitment may be filed to determine whether the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and whether by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others." (§ 2972, subd. (e); accord, *Allen, supra,* 42 Cal.4th at pp. 99–100.)

*Plain Statutory Language Sets a Mandatory Preparole Deadline for MDO Evaluations*

Petitioner contends section 2962, subdivision (d)(1) sets a mandatory deadline for the mental health evaluation and certification—i.e., "[p]rior to release on parole." She notes she was evaluated on September 8 and 9 of 2008, and certified on September 10—all past her September 3 parole release date.

■ In *Allen,* the California Supreme Court addressed the distinction between mandatory and directory statutory requirements. "Generally speaking, 'the "directory-mandatory" distinction is concerned only with whether a particular remedy—invalidation of the ultimate governmental action—is appropriate when a procedural requirement is violated . . . .' " (*Allen, supra,* 42 Cal.4th at p. 101.) "Although somewhat tautological, the principle is ostensibly or perhaps deceptively simple: 'If the action is invalidated, the requirement will be termed "mandatory." If not, it is "directory" only.' " (*Ibid.*) " 'Whether a particular statute is intended to impose a mandatory duty is a

question of interpretation for the courts.' [Citation.] We recognized long ago that 'there is no simple, mechanical test for determining whether a provision should be given "directory" or "mandatory" effect.' [Citation.] Unless the Legislature clearly expresses a contrary intent, time limits are typically deemed directory." (*Id.* at pp. 101–102.)

The *Allen* court interpreted statutory language that parallels the phrase at issue here. It construed section 2972, subdivision (e), which authorizes petitions for recommitment after the expiration of a one-year extension. (*Allen, supra,* 42 Cal.4th at p. 100.) The statute allows the petition to be filed "[p]rior to the termination of a commitment under this section." (§ 2972, subd. (e).)

The phrase "Prior to the termination of a commitment" created a mandatory deadline, the *Allen* court held. (§ 2972, subd. (e).) "[W]e conclude that the Legislature intended the deadline set forth in section 2972[, subdivision (e)] to be mandatory, i.e., requiring the district attorney to file a recommitment petition *before* the MDO's current commitment term ends. The consequence for not complying with a mandatory requirement, as discussed above, is generally the 'invalidation of the ultimate governmental action.' [Citations.] Here, that would mean invalidating the trial court's purported extension of Allen's recommitment . . . ." (*Allen, supra,* 42 Cal.4th at p. 104.)

The *Allen* court embraced the statutory construction adopted in *People v. Williams* (1999) 77 Cal.App.4th 436, 452 [92 Cal.Rptr.2d 1] (*Williams*), which held the deadline for trials on recommitment petitions was directory. The statute at issue provided, "The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown." (§ 2972, subd. (a).) The court contrasted this directory statute to section 2972, subdivision (e), which used mandatory language. "In contrast to section 2972[, subdivision (a)] is section 2972, subdivision (e). This subdivision establishes a deadline based on the MDO's release date, providing, '*Prior to the termination of a commitment* under this section, a petition for recommitment may be filed . . . .' [Citation.] The difference in these subdivisions indicates to us that when the Legislature intends to prescribe a trial commencement deadline or make the scheduled release date a deadline, it does so expressly and not by implication." (*Williams, supra,* 77 Cal.App.4th at p. 452.)

■ The parallel phrases "Prior to release on parole" (§ 2962, subd. (d)(1)) and "Prior to the termination of a commitment" (§ 2972, subd. (e)) should be construed similarly. "[A] word or phrase will be given the same meaning each time it appears in a statute . . . ." (*Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 53 [210 Cal.Rptr. 781, 694 P.2d

1153].) "[I]t is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law." (*Stillwell v. State Bar* (1946) 29 Cal.2d 119, 123 [173 P.2d 313].) "We can reasonably infer . . . that the Legislature intended the parallel language of the two [statutory] provisions to be construed identically." (*Preferred Risk Mutual Ins. Co. v. Reiswig* (1999) 21 Cal.4th 208, 217 [87 Cal.Rptr.2d 187, 980 P.2d 895].) ■ Sections 2962, subdivision (d)(1), and 2972, subdivision (e), are the only two subdivisions in the MDO Act that *start* with the phrasing "Prior to . . . ."

Section 2962, subdivision (d)(1) thus sets a mandatory deadline, just as does section 2972, subdivision (e). Together, the two statutes set mandatory deadlines for the commencement and conclusion of MDO commitment. To commence an MDO commitment, the prisoner must be evaluated and certified "[p]rior to release on parole . . . ." (§ 2962, subd. (d)(1).) And once an MDO commitment has been extended one year or more, it concludes by operation of law if a petition for recommitment is not filed "[p]rior to the termination of a commitment under this section . . . ." (§ 2972, subd. (e).)

■ The People contend the preparole evaluation and certification deadline is only directory. They note other deadlines in the MDO Act are directory. (See, e.g., *People v. Fernandez* (1999) 70 Cal.App.4th 117, 130 [82 Cal.Rptr.2d 469] [180-day deadline of § 2970 for recommitment petition]; *Williams, supra*, 77 Cal.App.4th at p. 451 [30-day deadline of § 2970 for recommitment trial].) If anything, these cases highlight the contrast between the phrasing used by the Legislature to set mandatory and directory deadlines in the MDO Act. As the *Williams* court commented when it noted the mandatory nature of " '[p]*rior to the termination of a commitment*,' " "when the Legislature intends to prescribe a trial commencement deadline or make the scheduled release date a deadline, it does so expressly and not by implication." (*Williams, supra*, 77 Cal.App.4th at p. 452.)

The People further contend a directory construction avoids absurd results. If the preparole deadline is mandatory, they contend, CDCR will be forced to release MDO's who received untimely evaluations and persons already released on parole cannot be certified as MDO's. To the contrary, it is absurd to encourage CDCR to hold prisoners in custody past their parole dates to accommodate "preparole" MDO evaluations and certification. And it is absurd to allow the Board to set MDO treatment as parole conditions for prisoners who have already been released on parole.

Even if the preparole deadline is mandatory, the People assert the violations here should be excused as good faith errors. They claim CDCR held

petitioner in custody past her parole release date due either to honest confusion over her custody credits or normal processing delays. But the Legislature knows how to create a good cause exception when it wants one—it did so in sections 2970 and 2972, subdivision (a) for petitions for one-year extensions. The *Allen* court contrasted these statutes to section 2972, subdivision (e), which lacks any such express exception. (*Allen, supra,* 42 Cal.4th at p. 100.) And it rejected the Attorney General's attempt to attach a good cause exception to section 2972, subdivision (e). (*Allen,* at p. 104.) Section 2962, subdivision (d)(1), similarly contains no good cause exception. "In the construction of a statute . . . the office of the Judge is . . . not to insert what has been omitted . . . ." (Code Civ. Proc., § 1858.) At any rate, the delay in evaluating and certifying petitioner hardly seems like good cause. (Cf. *People v. Superior Court (Small)* (2008) 159 Cal.App.4th 301, 309–310 [71 Cal.Rptr.3d 462] [State Department of Mental Health's delay in performing sexually violent predator evaluation is not "a good faith mistake of law or fact" excusing violation of statutory deadline].)

■ And even if CDCR or the Board violated a mandatory deadline, the People assert the court retains fundamental jurisdiction to determine whether the violation prejudiced defendant. The *Allen* court rejected this claim: "The Attorney General, however, asserts that even if section 2972[, subdivision (e)] is mandatory, the superior court retains 'fundamental jurisdiction' to determine whether the missed time deadline limit violates Allen's due process rights to compel dismissal of the proceeding. We disagree that the Attorney General's approach would provide Allen an adequate remedy." (*Allen, supra,* 42 Cal.4th at p. 104.) We share the *Allen* court's skepticism with authorizing the trial court to breathe life into an MDO certification reached in violation of a mandatory deadline.[2] As the *Allen* court held, violation of a mandatory MDO deadline "may be deemed prejudicial" because "more often than not, an MDO would be unable to show prejudice if his or her mental disorder is not in remission." (*Allen,* at p. 105.)

■ Finally, the People contend the Board did not violate the preparole deadline, whether it is directory or mandatory. They assert petitioner was never "release[d] on parole" (§ 2962, subd. (d)(1)) because she was still in custody when the evaluations and certification occurred. They note regulations define "California Agency Parolee" as "[a] felon released from confinement" (Cal. Code Regs., tit. 15, § 2000, subd. (b)(13)) and "Release on parole" as "actual transfer of a prisoner . . . to parole supervision in the

---

[2] The People's cited case is inapt. They contend mandatory requirements are not necessarily jurisdictional, relying upon *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1146–1147 [43 Cal.Rptr.2d 693, 899 P.2d 79]. But that case held the statutory deadlines at issue there "are directory, not mandatory and jurisdictional." (*Id.* at p. 1148.)

community" (Cal. Code Regs., tit. 15, § 2355). The People wrongly cloak CDCR with the power to withhold parole privileges by simply not releasing prisoners on their parole date. Conversely, prisoners in custody after their parole dates are already subject to their parole conditions. (*Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 875 [76 Cal.Rptr.2d 841].) After his parole release date, the prisoner's "status as a parolee cannot be questioned. Upon expiration of his determinate prison term, he had no status other than parolee." (*Ibid.*) The same is true for petitioner as of September 3, 2008—she had to be evaluated and certified (if appropriate) before her parole release date.

*The Board's MDO Determination Must Be Reversed, but Petitioner May Still Be Subject to Custodial Treatment*

In sum, CDCR violated a mandatory deadline by performing the mental health evaluations and certification required by section 2962, subdivision (d)(1), after petitioner's parole release date. And the Board wrongly excused the untimely evaluations and certification when it determined petitioner met the MDO criteria. "The consequence for not complying with a mandatory requirement . . . is generally the 'invalidation of the ultimate governmental action.' " (*Allen, supra,* 42 Cal.4th at p. 104.) Thus, the petition challenging the Board's determination that petitioner is an MDO should be granted. (Cf. *id.* at p. 96 [affirming decision that reversed commitment order and directed court to dismiss petition to extend commitment].)

The reversal of the Board's determination does not necessarily entail petitioner's unfettered release onto the streets.[3] The Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.; LPS Act) provides for a "series of temporary detentions and the appointment of conservatorships . . . ." (*Allen, supra,* 42 Cal.4th at p. 106.) "Because [petitioner] has been evaluated and treated only under the MDO Act up to this point, there has been no occasion to determine whether [she] would be subject to the requirements of the LPS Act. [Citation.] Thus, we underscore that our decision should not be construed as requiring [petitioner's] release if [she] is still in need of mental health treatment. Assuming [she] still requires such treatment, we presume that responsible parties will take appropriate steps to ensure [she] receives custodial treatment, for as long as is necessary, under the LPS Act." (*Id.* at p. 108.)

---

[3] Just prior to oral argument, the People informed us that petitioner was scheduled to be released on parole without MDO treatment as a parole condition, as the Board had recently found she no longer met the commitment criteria. (See § 2966, subd. (c).) We invited the parties to argue whether this appeal was moot, which they did. We later accepted letter briefs from the parties on this issue. We concluded we should decide this case because it "poses an issue of broad public interest that is likely to recur." (*La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 781–782 [17 Cal.Rptr.3d 467].)

## DISPOSITION

The petition is granted. Let a writ issue directing the trial court to (1) vacate the order denying petitioner's motion, and (2) enter an order granting the petition challenging the Board's determination that petitioner is an MDO.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.