[No. F022396. Fifth Dist. Apr. 10, 1996.]

BETTY WURTS, Plaintiff and Appellant, v.
COUNTY OF FRESNO et al., Defendants and Respondents.

[No. F022635. Fifth Dist. Apr. 10, 1996.]

BETTY WURTS, Plaintiff and Appellant, v.
ROBERT PETERS et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Betty Wurts, in pro. per., for Plaintiff and Appellant.

Baker, Manock & Jensen, Andrew R. Weiss, Greines, Martin, Stein & Richland, Martin Stein, Carolyn Oill and Timothy T. Coates for Defendants and Respondents.

## OPINION

**DIBIASO, J.**—A single superior court complaint (No. 479055-6) for alleged medical malpractice generated the two separate appeals we resolve by this opinion. Appellant Betty Wurts appeals (F022396) from the judgment entered after the trial court granted a motion for summary judgment brought by respondent the County of Fresno (the County). Wurts also appeals (F022635) from the later judgment entered in the same superior court action after the trial court granted a motion for nonsuit made by respondent Robert M. Peters, M.D. (Peters). We hold in part that a claim based upon the negligence of a health care provider filed with a governmental agency pursuant to the Tort Claims Act (Gov. Code, § 810 et seq.) does not also constitute a notice of intent to sue under Code of Civil Procedure[1] section 364 in the absence of evidence the claimant intended otherwise.

On February 1, 1993, Wurts filed an action for physical and emotional damages arising from alleged medical malpractice. She claimed Peters negligently performed esophageal surgery upon her on November 5, 1991, at Valley Medical Center, a hospital owned and operated by the County. She also asserted that Valley Medical Center negligently supervised Peters during the surgical procedure.

Wurts's lawsuit was preceded by a claim (Gov. Code, §§ 910, 911.2) under the provisions of the Tort Claims Act. The claim was mailed by Wurts to the County on May 1, 1992, and received by the County on May 4, 1992. By written notice mailed on June 29, 1992, the County notified Wurts that her claim had been rejected.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

Wurts's lawsuit was also preceded by a section 364 notice of intent to sue.[2] The parties agree this notice was mailed by Wurts to the County on November 4, 1992.[3]

On July 7, 1994, the trial court granted the County's motion for summary judgment on the ground Wurts failed to commence her action within six months (Gov. Code, § 945.6) after the County mailed the notice of rejection of Wurts's claim. Judgment in favor of the County was entered on July 19, 1994. Wurts's notice of appeal (F022396) was filed on September 16, 1994.

On August 1, 1994, the trial court denied Wurts's motion for permission to augment her expert witness list. On August 2, 1994, the trial court granted Peters's motion for nonsuit/dismissal. Judgment in favor of Peters was entered on August 11, 1994. Wurts filed a notice of appeal (F022635) on October 27, 1994.

## DISCUSSION

### I. *County of Fresno (No. F022396)*

■ Wurts's claim was timely presented within six months after her cause of action against the County accrued. (Gov. Code, §§ 911.2, 945.4.) Because this claim was rejected on June 29, 1992, Wurts had only until December 29, 1992, i.e., six months later, to file her lawsuit. (Gov. Code, § 945.6, subd. (a)(1).) Wurts contends her action, filed on February 1, 1993, was nonetheless timely because her notice of intent to sue, sent less than 90 days before December 29, 1992, operated to toll the limitations period for 90 days and therefore to extend it to March 29, 1993. (See *Woods* v. *Young* (1991) 53 Cal.3d 315, 320, 325 [279 Cal.Rptr. 613, 807 P.2d 455] [notice of intent sent within last 90 days of limitations period tolls statute for 90 days].)

The County responds by asserting that Wurts's tort claim was in legal and practical effect a notice of intent to sue, and, consequently, her subsequent,

---

[2]Section 364 provides, in pertinent part:

"(a)   No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.

"(b)   No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(d)   If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

[3]Although it is not contested that a notice of intent to commence an action was sent, the document itself is not in the appellate record.

separate notice was a nullity which did not toll the six-month limitations period. (See *Woods* v. *Young, supra,* 53 Cal.3d at pp. 320, 325 [notice of intent sent more than 90 days before expiration of limitations period does not toll the statute].) In particular, the County points to the specific description in the claim of the nature of the injuries Wurts says she suffered as a result of the alleged malpractice.[4] Both parties rely on *Anson* v. *County of Merced* (1988) 202 Cal.App.3d 1195 [249 Cal.Rptr. 457].

In *Anson* v. *County of Merced, supra,* 202 Cal.App.3d at page 1205, this court addressed a contention by the plaintiff that the trial court had erred in finding the plaintiff's tort claim, filed with the County of Merced, had fulfilled the requirements of section 364. We described the issue in these words: "The Government Code section 910 claim was filed on May 22, 1986. If this claim can be construed to be a proper notice for the purposes of Code of Civil Procedure section 364, then the subsequent notices to the physicians[5] could not have extended the time for filing the action because the first notice was filed before the six-month statute of limitations had even begun to run, and therefore well in advance of the threshold of 90 days before the expiration of the applicable statute of limitations required by Code of Civil Procedure section 364, subdivision (d). If the public entity claim was also valid as a notice of commencement of an action to the health care providers, the later notices would have been mere surplus paperwork, the only practical effect of which would have been an attempt to extend the statute of limitations." (*Anson* v. *County of Merced, supra,* 202 Cal.App.3d at p. 1203.)

We then pointed out that under section 364 the notice of intent to sue was required to contain a specific statement of the nature of the injuries suffered by the plaintiff, while Government Code section 910 only called for " '[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.' " (*Anson* v. *County of Merced, supra,* 202 Cal.App.3d at p. 1204.) We found this distinction to be a "crucial one," because the purpose of section 364 was to "place the health care provider on notice as to the alleged injuries which have been suffered by the plaintiff." (202 Cal.App.3d at p. 1204.)

We ultimately agreed with the plaintiff that her tort claim did not constitute a notice of intent for purposes of section 364: "[T]he claim falls significantly short of the specificity requirement. It states, 'This is a claim for medical malpractice which occurred on February 24, 1986, at the Merced

---

[4]With regard to her injuries, plaintiff's claim provided the following information: "damage to her esophagus, loss of a rib[,] severe physical and emotional damages."

[5]The physician defendants were employees of the County of Merced.

Community Medical Center.' No mention is made of the type of injuries suffered. Moreover, the claim simply states, 'The names of the public employees causing the claimant's injuries are medical personnel whose names are unknown to the claimant at this time.' This cannot be construed as sufficient notice to the individual physicians who were charged with malpractice. Under these circumstances the Government Code section 910 claim cannot serve as a proper notice of intention to commence an action as required by Code of Civil Procedure section 364." (*Anson* v. *County of Merced, supra,* 202 Cal.App.3d at p. 1204.)

We also held that a section 364 notice given during the last 90 days of the limitations period of Government Code section 945.6 extends the 6-month period. (*Anson* v. *County of Merced, supra,* 202 Cal.App.3d at p. 1204.)[6]

Distinguishing *Anson,* the trial court here found that Wurts's tort claim described her injuries with enough precision to qualify the claim as a section 364 notice. Wurts does not contend otherwise. We thus face the issue not directly addressed or decided by *Anson*—whether a claim under Government Code section 910 (tort claim) may also be deemed to be a notice of intent to sue for purposes of section 364 (notice) if the claim contains the information required by the latter statute. *Anson* implicitly assumed the answer is yes. We hold the answer is no, at least where the circumstances do not establish that the claimant intended his or her tort claim to also function as a notice.

Section 364 was promulgated in 1975 as a component of the Medical Injury Compensation Reform Act (MICRA). MICRA, a legislative response to a health care crisis caused by a rapid increase in premiums for medical malpractice insurance, was an attempt by the Legislature to " 'reduce the cost and increase the efficiency of medical malpractice litigation by revising a number of legal rules applicable to such litigation.' " (*Woods* v. *Young, supra,* 53 Cal.3d at pp. 319-320.) The Tort Claims Act, on the other hand, is a "thoughtfully devised statutory plan that is designed to control the basis under which public entities may be liable for damages." (*Schmidt* v. *Southern Cal. Rapid Transit Dist.* (1993) 14 Cal.App.4th 23, 28-29 [17 Cal.Rptr.2d 340] fn. omitted.) It was first enacted in 1963. (Stats. 1963, ch. 1715, § 2, p. 3383.)

However, within the legislative schemes of which each is a part, both section 364 and the claims filing provisions of the Tort Claims Act share essentially the same objective—to avoid lawsuits by encouraging early

---

[6]*Anson* determined that the service of a section 364 notice extended the six-month period for ninety days from the date of service of the notice. (*Anson* v. *County of Merced, supra,* 202 Cal.App.3d at p. 1205.) This is not consistent with the Supreme Court's later construction, in *Woods* v. *Young, supra,* 53 Cal.3d 315, 320, 325, of the effect of a section 364 notice, although *Anson* is not mentioned in *Woods.*

settlements. The notice of intent to sue and the 90-day waiting period prescribed by section 364 were designed to provide "a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process'" and to thereby bring about a decrease in the number of medical malpractice actions filed by injured parties. (*Woods* v. *Young, supra*, 53 Cal.3d at p. 320.) The aim of the claims filing requirements within the Tort Claims Act is "'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.]' [Citation.]" (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705 [263 Cal.Rptr. 119, 780 P.2d 349].)

This similarity of purpose, though, does not justify a holding that a tort claim constitutes a notice simply because the tort claim may happen to include specific information about the nature of the injuries suffered by the claimant. The Legislature knew of the existence of Government Code section 910 when section 364 was enacted. (See *In re Michael G.* (1988) 44 Cal.3d 283, 293 [243 Cal.Rptr. 224, 747 P.2d 1152]; *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) Yet there is nothing in section 364 or the other provisions of MICRA which betrays an intent that the notice required by section 364 could be satisfied by a claim filed under Government Code section 910 when the alleged medical malpractice was committed by a public health care provider.

Moreover, the filing of a tort claim with the involved agency does not necessarily evidence an intent to sue. A potential plaintiff may for any number of reasons decide not to pursue a lawsuit against the public entity after a claim has been made or denied, perhaps because of an intervening favorable settlement with another potential defendant or a more informed or revised conclusion about the likelihood of succeeding in a lawsuit against the agency.

In addition, the Tort Claims Act and MICRA address different "social ills." (*Anson* v. *County of Merced, supra,* 202 Cal.App.3d at p. 1199.) MICRA is "an interrelated legislative scheme enacted to deal specifically with *all* medical malpractice claims." (*Young* v. *Haines* (1986) 41 Cal.3d 883, 894 [226 Cal.Rptr. 547, 718 P.2d 909]; see also *Woods* v. *Young, supra,* 53 Cal.3d at pp. 324-325, italics added.) There is nothing in section 364, or any other provision of MICRA, which suggests the Legislature believed that malpractice litigation against government health care providers did not contribute to the coverage crisis which prompted the enactment of MICRA. A notice, given after a tort claim has been denied, will further the purposes of MICRA by offering the parties a second opportunity to resolve the claim,

with the knowledge that a lawsuit will follow if this last effort to settle is unsuccessful. (See *Godwin* v. *City of Bellflower* (1992) 5 Cal.App.4th 1625, 1631 [7 Cal.Rptr.2d 524] ["[U]nless a health care provider has actual notice of a party's intent to sue, no prelitigation settlement can be considered."].)

We acknowledge the Supreme Court's holding in *Phillips* v. *Desert Hospital Dist.*, *supra*, 49 Cal.3d at pages 701-702, that a section 364 notice may activate the notice and defense waiver provisions (Gov. Code, §§ 910.8, 911, 911.3) of the Tort Claims Act. The notice and defense waiver statutes induce public entities to "investigate claims promptly, and to make and notify claimants of their determinations, thus enabling claimants to perfect their claims." (*Phillips*, *supra*, 49 Cal.3d at p. 706.) What use a document may be intended to serve, or how it may be labeled, is immaterial for purposes of determining whether the notice and defense-waiver provisions are triggered. (*Id.* at pp. 707, 711.)

However, that a notice may ultimately function as a tort claim for purposes of the Tort Claims Act under certain circumstances (if the governmental agency fails to timely notify the claimant that the document does not substantially comply with Government Code section 910) does not mandate the reverse conclusion that a tort claim must be deemed a notice under other circumstances (if it includes specific information about the nature of the injuries suffered). A claimant who, like Wurts here, has complied with the letter and spirit of both section 364 and Government Code section 910 is entitled to the full benefit of both statutes, including tolling for 90 days of the 6-month limitations period of Government Code section 945.6. (See *Woods* v. *Young*, *supra*, 53 Cal.3d at pp. 325-326; see also *Anson* v. *County of Merced*, *supra*, 202 Cal.App.3d at pp. 1204-1205).[7] Having relied upon the section 364 extension to file an action more than six months after the date of mailing of the notice of rejection, the claimant should not be subject to losing his or her lawsuit by a later determination that what was in fact nonessential information in the tort claim constituted the detailed facts about the injury required by section 364. Nor should the claimant be compelled, in order to attempt to avoid such an outcome, to craft his or her claim so carefully and tightly as to provide only the bare minimum of information required by Government Code section 910 and therefore nothing which might later be construed as a specific statement concerning "the nature of the injuries suffered." (§ 364.) By holding that a tort claim cannot serve as a notice where there is no evidence the claimant intended the tort claim to serve as a notice, we expect that needless uncertainty and potential controversy will be avoided and full disclosure of all available information in a tort

---

[7]For this reason, along with others previously expressed, our holding would be the same even if the information required by section 364 duplicated the information required by Government Code section 910.

claim will be encouraged, thereby promoting the goals of the Tort Claims Act by facilitating prompt investigation by the agency and possible early settlement of the claim. (See *Phillips* v. *Desert Hospital Dist., supra,* 49 Cal.3d at p. 709.)

Finally, we make clear we do not decide that a claimant is prohibited, if he or she wishes to present a notice before the Government Code section 945.6 period commences to run, from contemporaneously filing a tort claim and giving a notice of intent to sue, in the same or separate documents. We only hold that when, as here, the pertinent facts do not disclose an intent on the part of the claimant to combine the two, the tort claim cannot be deemed to also constitute a notice. Obviously, we do not find that inclusion in a tort claim of specific information about the nature of the claimant's injuries is sufficient in and of itself to prove an intent on the part of the claimant to give a notice in conjunction with the filing of a tort claim.

II.   *Robert Peters, M.D. (No. F022635)**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment in appeal No. F022396 is reversed. The judgment in appeal No. F022635 is affirmed. Each party shall bear its own costs on appeal in each appeal.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

The petition of respondents County of Fresno et al., for review by the Supreme Court was denied August 5, 1996.

*See footnote, *ante,* page 380.