[No. D031570. Fourth Dist., Div. One. Sept. 30, 1999.]

ORLEY BENNETT, Plaintiff and Appellant, v.
IMAD SHAHHAL, Defendant and Respondent.

**COUNSEL**

Law offices of John R. Mittelman, John R. Mittelman; Miller & James and Patricia I. James for Plaintiff and Appellant.

Higgs, Fletcher & Mack, Loren G. Freestone; McInnis, Fitzgerald, Rees & Sharkey and Gregory W. Pollack for Defendant and Respondent.

## OPINION

**NARES, J.**—In this medical malpractice action, plaintiff Orley Bennett appeals from a summary judgment in favor of defendant Imad Shahhal, M.D. As an apparent matter of first impression, we hold that a *second* 90-day notice of the intent to bring suit does not toll the 1-year limitations period. (Code Civ. Proc.,[1] § 364, subds. (a) & (d).) Accordingly, we affirm the judgment as Bennett's action was time-barred.

### BACKGROUND

Bennett saw Dr. Shahhal, complaining of difficulty walking, slurred speech, memory loss, confusion and incontinence. A CT scan revealed cerebral atrophy and hydrocephalus. On April 4, 1996, Dr. Shahhal inserted a shunt into Bennett's brain that drained fluid into his abdomen. Bennett returned to Dr. Shahhal on April 22 and May 6, 1996, complaining of swelling near the abdominal incision. On the latter date, Dr. Shahhal told Bennett he needed to return to the hospital for another surgery. Bennett, however, no longer trusted Dr. Shahhal and believed he had done something wrong.

Bennett visited Dr. Mark Stern, who suspected the abdominal end of the shunt had dislodged. Dr. Stern performed surgery on Bennett on May 20, 1996, to reattach the shunt and excise an abdominal cyst. Dr. Stern told Bennett he "was going to take a wait and see attitude" about whether the brain end of the shunt would have to be repositioned, as it was "draining fluid sluggishly . . . ." Dr. Stern hoped the removal of the cyst would remedy the problem.

After recovering from the May 20, 1996, surgery, Bennett spoke to Attorney John Bray about suing Dr. Shahhal for malpractice. On July 30, 1996, Bray sent Dr. Shahhal a 90-day notice of the intent to commence a malpractice action against him, as required by section 364, subdivision (a). Bennett was unaware Bray had sent the notice. Several months later, Bennett told Bray he could not pursue a lawsuit due to financial and medical problems.

In January 1997 Dr. Stern was required to reposition the shunt in Bennett's brain. After recovering from that surgery, Bennett contacted his current counsel, John Mittelman, about suing Dr. Shahhal. Mittelman, unaware that Bray had sent Dr. Shahhal a 90-day notice, sent him another one on March 5, 1997. Bennett filed his complaint against Dr. Shahhal on July 1, 1997.

---

[1]Statutory references are to the Code of Civil Procedure unless specified otherwise.

Dr. Shahhal successfully moved for summary judgment on the ground Bennett's second notice under section 364, subdivision (a) did not toll the one-year statute of limitations, and thus the action was time-barred. This appeal followed.

## Discussion

### I

Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) ■ "On appeal, this court exercises its independent judgment in determining whether there are no triable issues of material fact and the moving party thus is entitled to judgment as a matter of law." (*Sanchez* v. *Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1466 [55 Cal.Rptr.2d 415].) Because summary judgment is a drastic procedure, we strictly construe the moving party's papers and liberally construe the opposing party's papers. (*Id.* at p. 1465.) We resolve all doubts as to whether any material, triable issues exist in favor of the party opposing summary judgment. (*Barber* v. *Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

### II

Section 340.5 provides in relevant part that a medical malpractice action must be brought "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Section 364 provides in relevant part:

"(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.

". . . . . . . . . . . . . . . . . . . . . . . .

"(d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

The Supreme Court has declined to give subdivision (d) of section 364 a literal interpretation. Rather, it held the provision *tolls* the 1-year limitations period for 90 days where the notice was served within 90 days of its

·expiration. (*Woods* v. *Young* (1991) 53 Cal.3d 315, 325 [279 Cal.Rptr. 613, 807 P.2d 455].)[2]

■ Bennett does not dispute that his action against Dr. Shahhal accrued no later than May 20, 1996. The parties also agree the first 90-day notice did not toll the 1-year statute of limitations because it was not served within 90 days of its expiration. Bennett contends the second 90-day notice tolled the limitations period, making his lawsuit timely. Dr. Shahhal counters that the second notice was a nullity and thus the limitations period was not extended beyond May 20, 1997.

■ "Our primary aim in construing any law is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) ■ Nothing in the language of section 364 suggests the Legislature intended a tolling of the one-year statute of limitations after the service of a second notice of intent within ninety days of its expiration.

The Legislature enacted section 364 in 1975 "as a component of the Medical Injury Compensation Reform Act (MICRA). MICRA, a legislative response to a health care crisis caused by a rapid increase in premiums for medical malpractice insurance, was an attempt by the Legislature to ' "reduce the cost and increase the efficiency of medical malpractice litigation by revising a number of legal rules applicable to such litigation." ' [Citation.]" (*Wurts* v. *County of Fresno* (1996) 44 Cal.App.4th 380, 385 [51 Cal.Rptr.2d 689].) ■ The purpose of the 90-day waiting period of section 364, subdivision (a) "is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process.' [Citations.]" (*Woods* v. *Young, supra,* 53 Cal.3d at p. 320.)

---

[2]The court explained: "A literal application of section 364(d) . . . leads to incongruous results, as this example shows: A plaintiff serves the 90-day notice of intent to sue required by section 364(a) 50 days before expiration of the 1-year statute of limitations. Because section 364(d) would in that case extend the 1-year limitations period by 90 days, calculated from the date of service of the 90-day notice, the plaintiff has 1 year and 40 days in which to file the action. [¶] If our hypothetical plaintiff were to file suit on the last day of the extension, the plaintiff would violate the 90-day waiting requirement of section 364(a), which requires the plaintiff to give the defendant health care provider *at least* 90 days' prior notice of intent to sue. If, however, the plaintiff were to file the action one day after the extended period, that is, one year and forty-one days after discovery of the injury, the action would be barred by the one-year statute of limitations because it was filed one day beyond the limitations period as extended." (*Woods* v. *Young, supra,* 53 Cal.3d at p. 321, original italics.)

In *Woods* v. *Young, supra,* 53 Cal.3d 315, the court explained that when the Legislature enacted MICRA it drew a distinction between plaintiffs who promptly gave notice of the intent to sue and those who gave notice within 90 days of the expiration of the 1-year limitations period. "Through section 364(d), the Legislature extended the statute of limitations '[i]f the notice is served within 90 days of the expiration of the applicable statute of limitations . . . .' Presumably the Legislature's reason for imposing this restriction was that *plaintiffs who serve the notice before the final 90 days of the limitations period will still have time to file their actions after the 90-day waiting period is concluded, and so they do not need an extension.*" (*Id.* at p. 326, italics added.) The court further stated: "The distinction . . . does serve the legislative objective of allowing time for negotiations without the formal initiation of legal proceedings. Tolling the limitations period when the plaintiff serves the notice during the last 90 days of that limitations period allows MICRA plaintiffs to continue negotiating with the defendants for the full 90-day waiting period contemplated by MICRA before their actions must be filed to avoid the bar of limitations. At the same time, this construction of section 364(d), which restricts relief to plaintiffs who serve the notice of intent to sue during the last 90 days of the limitations period, *avoids judicially converting the legislatively established 1-year statute of limitations (§ 340.5) into a 1-year-and-90-day statute of limitations in all cases.*" (*Id.* at p. 327, italics added.)

We conclude the tolling provision of section 364, subdivision (d) applies only to plaintiffs who have served their original notice of intent to sue within 90 days of the expiration of the applicable limitations period. The service of an early notice, as here, fully achieves the legislative objective of encouraging negotiated resolutions of disputes without the necessity of suit. A second notice is not required and would generally serve no purpose other than, under Bennett's interpretation, extending the one-year limitations period by ninety days. (See *Anson* v. *County of Merced* (1988) 202 Cal.App.3d 1195, 1203 [249 Cal.Rptr. 457] [observing second notice under section 364, subdivision (a) "would have been mere surplus paperwork, the only practical effect of which would have been an attempt to extend the statute of limitations"].) Any erosion of the distinction between plaintiffs who serve early notices of intent to sue and those who serve them within 90 days of the expiration of the applicable statute of limitations should come from the Legislature.[3]

---

[3]Bennett cites *Wurts* v. *County of Fresno, supra,* 44 Cal.App.4th 380, for the proposition that a second notice of intent to sue promotes settlement potential, thereby justifying the tolling of the one-year limitations period where the second notice is served within one year of its expiration. In *Wurts,* the court held a tort claim under Government Code section 910 does

## III

Bennett argues the second notice was not a nullity because it concerned different injuries than the first notice. The first notice stated Dr. Shahhal's negligence "caused the following injuries: surgery to remove a cyst in [Bennett's] abdomen as a result of the unsecured shunt." The second notice stated Dr. Shahhal "negligently performed a surgical procedure for placement of right ventriculoperitoneal shunt and that personal injuries resulted . . . ."[4] Contrary to Bennett's assertion, the notices were not fundamentally different. Both concerned Dr. Shahhal's negligence in placing the shunt, and the second notice does not specify any injury. However, Bennett's argument fails even if the notices concerned different injuries arising from Dr. Shahhal's treatment. Section 364 does not suggest that successive 90-day notices are proper where different or further injuries are subsequently discovered, and duplicative notices do not serve the legislative purpose of encouraging settlement.

■ A malpractice action may not be pursued piecemeal. " 'As a general rule, where an injury, although slight, is sustained in consequence of the wrongful act of another, . . . the statute of limitations attaches at once. It is not material that all the damages [resulting] from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. . . .' " (*Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 774 [247 P.2d 133].) "The long-standing rule in California is that a single tort

not constitute a notice of intent to sue under section 364, subdivision (a) unless the plaintiff so intended. (*Wurts* v. *County of Fresno, supra,* at p. 387.) The court noted that a tort claim did not always evidence intent to sue, unlike the notice required under MICRA. "A notice, given after a tort claim has been denied, will further the purposes of MICRA by offering the parties a second opportunity to resolve the claim, with the knowledge that a lawsuit will follow if this last effort to settle is unsuccessful." (*Id.* at pp. 386-387.) The situation is different here, where Bennett's first notice clearly evidenced the specific intent to sue. " 'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

We also reject the suggestion Bennett was entitled to a tolling of the limitations period on equitable grounds since he was unaware Bray sent the first notice of intent to sue to Dr. Shahhal. " 'This court is not required to discuss or consider points which are not . . . supported by citation to authorities . . . .' [Citation.]" (*Kim* v. *Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834]; *MST Farms* v. *C. G. 1464* (1988) 204 Cal.App.3d 304, 306 [251 Cal.Rptr. 72].) In any event, an attorney's knowledge is imputed to the client. (*People* v. *Amerson* (1984) 151 Cal.App.3d 165, 169 [198 Cal.Rptr. 678].)

[4] A "ventriculoperitoneal shunt" is defined as "[t]he surgical creation of a communication between a cerebral (brain) ventricle . . . and the peritoneal [abdominal] cavity . . . by means of a plastic tube, to provide drainage of cerebrospinal fluid . . . , for the relief of hydrocephalus . . . ." (6 Attorneys' Dict. of Medicine and Word Finder (1999) p. V-67.)

can be the foundation for but one claim for damages. [Citation.] Accordingly, if the statute of limitations bars an action based upon harm immediately caused by defendant's wrongdoing, a separate cause of action based on a subsequent harm arising from that wrongdoing would normally amount to splitting a cause of action." (*Miller* v. *Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1622 [2 Cal.Rptr.2d 796].) ▮ Bennett had but one cause of action against Dr. Shahhal, and thus, again, the second notice served no purpose but to extend the statute of limitations.

## IV

▮ Alternatively, Bennett contends the one-year statute of limitations should be tolled "due to [his] dementia." The only authority he cites is *Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212, 230 [36 Cal.Rptr. 537], which concerned section 352, subdivision (a). Under that provision "a person who is 'insane' is disabled from bringing suit. 'Insan[ity]' is defined for these purposes as 'a condition of mental derangement which renders the sufferer incapable of caring for [his or her] property or transacting business, or understanding the nature or effects of [his or her] acts.' [Citation.]" (*DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1027 [242 Cal.Rptr. 368].)

Section 352, however, is a general tolling statute that is inapplicable to MICRA actions governed by section 340.5. "There is no evidence of a legislative intent . . . to allow exceptions other than those listed in section 340.5. All indications of intent are to the contrary. The legislative enumeration of certain exceptions by necessary implication excludes all other exceptions. [Citation.]"[5] (*Fogarty* v. *Superior Court* (1981) 117 Cal.App.3d 316, 320 [172 Cal.Rptr. 594]; see also *Woods* v. *Young, supra,* 53 Cal.3d at pp. 324-325.)

In any event, "[n]o person can avail himself of a disability, unless it existed when his right of action accrued." (§ 357.) According to Bennett's declaration, his mental problems began in June 1996, after his action against Dr. Shahhal accrued. Additionally, Bennett's lay opinion was insufficient to establish any mental disability. (See *Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 848-849 [30 Cal.Rptr.2d 768] [lay opinion does not create triable issue of material fact regarding medical condition].)

---

[5]Under section 340.5, the limitations period may be tolled upon proof of fraud, concealment or the presence of a foreign body.

## DISPOSITION

The judgment is affirmed.[*]

Kremer, P. J., and Huffman, J., concurred.