**Richard D. ROSENBLATT, Plaintiff,**

v.

**ERNST & YOUNG INTERNATIONAL, LTD., et al., Defendants.**

**No. Civ. 99–1163–B (JFS).**

United States District Court, S.D. California.

March 1, 2000.

Philip Burkhardt, Rancho Santa Fe, CA, for plaintiff.

Robert G. Steiner, San Diego, CA, Pamela S. Palmer, Los Angeles, CA, for defendants.

## ORDER

BREWSTER, Senior District Judge.

### I. Introduction

Before the Court is Plaintiff Richard D. Rosenblatt's ("Plaintiff" or "Rosenblatt") Motion For Remand Concerning the Second Amended Complaint.

### II. Background

#### A. Procedural Background

On January 12, 1999, Plaintiff filed his initial complaint in this action in the Superior Court of California, County of San Diego, North County Branch, naming as defendants three alleged residents of California: Ernst & Young, LLP ("EY–LLP"), James Pope ("Pope"), and a non-existent entity. On May 5, 1999, Plaintiff filed a First Amended Complaint ("FAC") in state court naming EY–LLP, Pope, Does 1–100, and, for the first time, Ernst & Young International, Ltd. ("EYI"). The FAC set forth six causes of action: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) suppression of fact; (4) constructive fraud; (5) professional negligence; and (6) declaratory relief.

On June 4, 1999, EYI timely removed this action from state court based on diversity jurisdiction under 28 U.S.C. § 1332(a)(2). EYI removed on the basis that Rosenblatt is a citizen of California,

EYI is a citizen of the Cayman Islands where it is incorporated, and that EY–LLP and Pope (California residents) are "sham" defendants because Plaintiff's claims against them are barred by the statute of limitations. (Notice of Removal ¶¶ 5, 6, 13, 18.) EYI also filed a Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. Defendants EY–LLP and Pope joined in the removal of the FAC on June 8, 1999, and thereafter filed a joint Motion to Dismiss the First Amended Complaint Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

On July 2, 1999, Plaintiff filed a Motion for Remand and Award of Attorneys' Fees. Plaintiff argued in his Motion for Remand that this Court lacks diversity jurisdiction over the instant case. Plaintiff argued that EYI is a Cayman Islands limited liability company ("LLC") with partners in California, and thus is a California citizen defeating diversity. Plaintiff further contended that EY–LLP and Pope are not sham defendants and, because they are California citizens, they defeat diversity.

On September 10, 1999, the Court entered an Order Tentatively Denying Plaintiff's Motion for Remand and Motion for Attorneys' Fees ("Sept. 10 Order"). The Court found that (a) EYI is a citizen of the Cayman Islands and not a California citizen and (b) EY–LLP and Pope are sham defendants because Plaintiff's claims against them are barred by the statute of limitations. However, the Court granted Plaintiff fifteen days to amend his FAC to show that the claims against EY–LLP and Pope are not barred by the statute of limitations. The Court deferred action on the pending motions to dismiss.

1. There is also a slight insubstantial change of wording in ¶ 35.

2. In his Motion to Remand, Plaintiff Also attempts to re-argue the issue of EYI's citizenship but adds no new facts to support his claim. The Court declines to address this argument. The Court granted Plaintiff leave to file a Second Amended Complaint to address the statute of limitations question only;

Plaintiff filed his Second Amended Complaint on September 28, 1999. The Second Amended Complaint's allegations are nearly identical to the First Amended Complaint; however, it adds a cause of action for breach of fiduciary duty.[1] On October 25, 1999, Plaintiff filed a Motion for Remand on the Second Amended Complaint, which is before the Court. In that motion, Plaintiff argues that his new cause of action for breach of fiduciary duty is not barred by the statute of limitations.[2]

After briefing by the parties, on January 6, 2000, the Court held a hearing on the renewed Motion for Remand. At that hearing, the Court invited further briefing on the issue of damages in relation to the statute of limitations. The further briefing was complete with the filing of Plaintiff's supplemental reply memorandum on February 14, 2000.

## B. Plaintiff's Factual Allegations[3]

According to Plaintiff's SAC, his claims arise out of his activities beginning in 1972 as a "Name" in insurance syndicates organized through Lloyd's of London ("Lloyd's"). (SAC ¶ 11.) For the chance of large profits, "Names" accept the risk of unlimited liability on insurance coverage underwritten by the syndicates in which they invest. (SAC ¶¶ 9, 11, 16, 21.) Between 1981 and 1989, Arthur Young and Arthur Young International (collectively "AY"), through staff member Pope and others, provided accounting services to Plaintiff with respect to his Lloyd's affairs and other matters. (SAC ¶¶ 6, 12, 13.) According to Plaintiff, EYI succeeded to, and assumed all liabilities of, AY pursuant to AY merger; Plaintiff also states that

alternatively, Plaintiff's repeated argument regarding EYI's citizenship is denied for the reasons set forth in the Court's prior Order dated September 10, 1999.

3. The following statement of facts is taken from the September 10 Order. However, cites to the Second Amended Complaint replace the cites to the First Amended Complaint.

EY–LLP at all times material was a "member" of EYI. (SAC ¶¶ 3, 29.)

Plaintiff alleges that in 1981, meetings took place between representatives of the firms on Lloyds' panel of auditors, including AY and in particular, Plaintiff's personal accountant Norman Raitz ("Raitz"), concerning the growing volume of information and evidence concerning the level of claims which were building up as a result of coverage of asbestos-related risks by many Syndicates over a number of years. (SAC ¶¶ 12, 22.) Raitz attended further meetings in 1981 and 1982 regarding the increasing level of exposure to asbestos-related claims. (SAC ¶¶ 23, 24.) On February 24, 1982, several accounting firms from Lloyds' panel of auditors, including AY, sent a letter of alarm notifying Lloyd's of the impending asbestos-related claims and the inability of certain Syndicates to quantify their final liability ("Neville Russell Letter"). (SAC ¶ 26; Ex. 3.) Plaintiff alleges that, as instructed by Lloyd's, the panel of auditors, including AY, concealed the "impending asbestos disaster." (SAC ¶ 26.) Thus, Plaintiff alleges that "at the latest 1981," AY was fully aware of the serious financial danger facing Plaintiff and other Lloyd's "names" in Syndicates which had originally insured asbestos-related risks and continued to reinsure such risks in 1982 and thereafter. (SAC ¶ 27.) Plaintiff claims that had he been informed by AY and E & Y[4] of its findings regarding the impending "asbestos disaster," Plaintiff could have avoided investing with Lloyd's, or at least with Lloyd's syndicates reinsuring asbestos-related policies. (SAC ¶ 30.) Plaintiff alleges he has been "financially devastated" due to continuing losses resulting from his investment participation in Syndicates insuring and/or reinsuring asbestos-related policies. (SAC ¶ 33.) These alleged losses include a March 13, 1998 judgment obtained in the United Kingdom against Plaintiff in favor of Lloyd's for £413,500 (approximately $682,000) plus costs and interest. (SAC ¶ 35.)

## III. DISCUSSION

### A. Standard of Law[5]

On a motion to remand, the court must determine whether the case was properly removed to the federal court in the first instance under 28 U.S.C. § 1441. *See Emrich v. Touche Ross and Co.,* 846 F.2d 1190, 1194–95 (9th Cir.1988). Section 1441(a) authorizes removal of "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction." The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statutes are construed restrictively, so as to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir.1992). The reason for strict construction is to prevent waste of judicial resources: i.e., if it turns out there is no "federal question"[6] or "diversity"[7] jurisdiction, the federal court's judgment would have to be set aside on appeal. *Hill v. United Fruit Co.,* 149 F.Supp. 470, 473 (S.D.Cal.1957). Jurisdictional concerns can be avoided by remanding to state courts which have general jurisdiction. *Id.*

■ A non-diverse party named in the state court action may be disregarded if the federal court determines that party's joinder is "sham" or "fraudulent" in that no possible cause of action has been stated against that party. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent" is not used in the tort sense. No intent to deceive or

---

4. In his Second Amended Complaint, Plaintiff refers to Ernst & Young and Ernst & Young International collectively as E & Y. (SAC ¶ 29.)

5. This Standard of Law discussion is taken from the Court's September 10 Order as it is equally relevant here.

6. 28 U.S.C. § 1331 (federal question section).

7. 28 U.S.C. § 1332(a) (diversity section).

other "bad" motive on a plaintiff's part need be shown. In this context, "fraudulent" is a term of art and not intended to impugn the integrity of a plaintiff or counsel. *Id.*

■] To show fraudulent joinder, a party does not have to show that the joinder was for the purpose of preventing removal. Rather, the question is simply whether there is any possibility that plaintiff will be able to state a claim against the party in question. *Lewis v. Time Inc.,* 83 F.R.D. 455, 460 (E.D.Cal.1979), *aff'd,* 710 F.2d 549 (9th Cir.1983). If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled law of the state, the joinder of the resident defendant is deemed fraudulent for purposes of diversity jurisdiction. *McCabe,* 811 F.2d at 1339.

## B. Tentative Ruling in September 10 Order

In its September 10 Order, the Court tentatively ruled that EY–LLP and Pope are sham defendants because Plaintiff's claims against them appeared barred by the statute of limitations. The Court held that the statute of limitations began to run at the latest when Plaintiff on March 23, 1995 filed a declaration in a prior case in this District which he, among other plaintiffs, had filed against Lloyd's. Plaintiff attached as exhibits to that declaration the Neville Russell Letter and minutes from a meeting of the panel of auditors which listed his personal accountant Raitz as AY's representative. Plaintiff acknowledges in his FAC (and again in his SAC at ¶ 41) that the Neville Russell Letter and the knowledge that Raitz was on the panel of auditors put him on notice of AY and E & Y's alleged fraud and deceit in relation to the asbestos crisis. The Court noted that the March 1995 declaration was signed under penalty of perjury attesting to Plaintiff's "personal knowledge of the evidentiary materials submitted with this declaration." Thus, the Court held that Plaintiff had constructive knowledge of the alleged fraud at least by March of 1995 and that the statute of limitations thus began to run then. Because Plaintiff's fraud claims are governed by a three-year statute of limitations and his professional negligence claims by a two-year limitations period, and because Plaintiff filed this action on January 12, 1999, the Court tentatively held that Plaintiff's claims are time-barred. However, the Court granted Plaintiff fifteen days in which to file a Second Amended Complaint to give him an opportunity to set forth claims that are not barred by the statute of limitations.

## C. Statute of Limitations for Breach of Fiduciary Duty

As mentioned above, Plaintiff's SAC differs from his FAC in that it adds a "cause of action" for breach of fiduciary duty. (SAC ¶¶ 75–82.) Plaintiff argues that a claim for breach of fiduciary duty is governed by the four-year statute of limitations set forth in California Code of Civil Procedure section 343.[8]

Defendant EYI filed an opposition to the motion to remand. It argues that the statute of limitations for a breach of fiduciary duty claim is dependent on the gravamen of the claim, which here, EYI claims, is either fraud or negligence. EYI further argues that even if a four-year statute of limitations applied, Plaintiff's claims would still be barred by the statute of limitations.

California and Ninth Circuit authorities are split regarding the question of whether the limitation period for breach of fiduciary duty is four years or whether the period is determined by examining the gravamen of the complaint. However, this Court need not attempt to resolve this conflict because, for the reasons discussed below, even if a four-year statute of limitations applied to the breach of fiduciary duty

---

**8.** This "catchall" section provides that "[a]n action for relief not hereinbefore provided for must be commenced within four years after the cause of action accrues." CAL. CODE CIV. PROC. § 343.

claim, Plaintiff's claim would still be barred by the statute of limitations.

## D. Commencement of Running of Statute of Limitations

EYI argues that even if a four-year statute of limitations applies, Plaintiff's claims are still time-barred. EYI argues that at the latest, in October or November of 1994 Plaintiff had actual knowledge or, at the least, constructive notice of the facts giving rise to his claims in this action.

Examining whether the statute of limitations has expired is appropriate when analyzing whether certain defendants are sham defendants for the purposes of removal. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318–20 (9th Cir.1998). A court may play "the strobe of judicial notice" upon the pleadings when it appears that the action is barred by the statute of limitations. *Id.* at 1319–20.

 Once the Plaintiff has filed a motion to remand, the burden of establishing jurisdiction is on EYI, who seeks removal. *See Gaus, supra,* 980 F.2d at 566. EYI must prove based on a preponderance of the evidence that the non-diverse defendants are sham defendants. For the reasons discussed below, EYI has met that burden.

 To determine whether Plaintiff's claims against the non-diverse defendants are time-barred, it is necessary to determine when the statute of limitations on his breach of fiduciary duty claim—assuming arguendo that it is a valid claim—began to run. "A breach of fiduciary duty claim is based on concealment of facts, and the statute begins to run when plaintiffs discovered, or in the exercise of reasonable diligence could have discovered, that facts had been concealed." *Stalberg v. Western Title Ins. Co.*, 230 Cal.App.3d 1223, 1230, 282 Cal.Rptr. 43 (1991). *See also McKeown v. First Interstate Bank of California,* 194 Cal.App.3d 1225, 1228, 240 Cal. Rptr. 127 (1987) (holding that the statute of limitations for breach of fiduciary duty began to run "when appellants knew, or should have known, the essential facts to

establish the elements of their causes of action, and when they had sustained appreciable and actual damage"). California courts have applied the so-called "discovery rule" to claims for breach of fiduciary duty. *April Enterprises Inc. v. KTTV*, 147 Cal.App.3d 805, 826–27, 195 Cal.Rptr. 421 (1983). The *April Enterprises* court stated:

> [A] cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action ..., this has been interpreted under the discovery rule to be when "plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence."

*Id.* at 826, 195 Cal.Rptr. 421 (quotations omitted).

 In this case, undisputed facts reveal that Plaintiff "discovered, or in the exercise of reasonable diligence could have discovered, that facts had been concealed" no later than October 5, 1994. *Stalberg,* 230 Cal.App.3d at 1230, 282 Cal.Rptr. 43. On that date, an amended complaint was filed by a group of over five hundred plaintiffs, of which Rosenblatt was one. (EYI's Request for Judicial Notice & Exs. in support of Motion to Dismiss "Notice Exhibits," Ex. 1.) The complaint was filed in the Southern District of California and was styled *Richards et al. v. Lloyd's of London, et al.,* Civil No. 94–1211 S(POR) (*"Richards"*). The plaintiffs' charges against Lloyd's entities included fraud relating to the asbestos-related policies. Monetary damages were sought.

Paragraph 141 of the *Richards* amended complaint quotes several portions of the Neville Russell Letter. As mentioned above, in the Neville Russell Letter dated February 24, 1982, Lloyds' panel of auditors, including AY, warn Lloyd's of the impending asbestos-related claims and the inability of certain Syndicates to quantify their final liability. Arthur Young McClelland Moores & Co. is specifically listed as

one of the auditors on the panel. The Court finds that, since the Neville Russell letter was available to Plaintiff for review, he "could have discovered [his] injury and cause through the exercise of reasonable diligence." *April Enterprises,* 147 Cal. App.3d at 826, 195 Cal.Rptr. 421. The Neville Russell Letter was available to Plaintiff through his own attorneys in the *Richards* case. The letter shows that Arthur Young was aware of the asbestos problem in 1982. Thus, for example, Plaintiff should have known that AY had "knowledge of the looming asbestos crisis." (SAC ¶ 28.) He would know that "AY and E & Y encouraged and allowed plaintiff to participate in Syndicates which AY and E & Y knew were heavily involved in the reinsuring of asbestos-related risks." (*Id.* at ¶ 30.) In short, after reasonably diligent review, Plaintiff should have discovered that facts had been concealed, *see Stalberg,* 230 Cal.App.3d at 1230, 282 Cal.Rptr. 43, and should have known the essential facts to establish the elements of his causes of action. *McKeown,* 194 Cal. App.3d at 1228, 240 Cal.Rptr. 127.[9]

■ Moreover, Plaintiff acknowledges (and the record reflects) that he had suffered damages in the form of monetary losses in 1994, but argues that because the amount of future liability was unclear, the statute of limitations did not begin to run at that time. (Plaintiff's Supp. Reply Brief at 2.) The Court rejects that argument. Under California law, "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages." *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison,* 18 Cal.4th 739, 743, 76 Cal.Rptr.2d 749, 958 P.2d 1062 (1998). Further, "[n]either uncertainty of amount nor difficulty of proof renders that injury speculative or inchoate." *Id.* at 744, 76 Cal.Rptr.2d 749, 958 P.2d 1062. Thus, "neither uncertainty as to the amount of

damages suffered nor difficulty in proving damages tolls the statute of limitations." *Davies v. Krasna,* 14 Cal.3d 502, 514, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975). Additionally, the cause of action will arise even if the plaintiff has not yet sustained all, or even the greater part of, his damages. *Jordache,* 18 Cal.4th at 750, 76 Cal.Rptr.2d 749, 958 P.2d 1062.

■ Plaintiff also argues that, even though he suffered losses in 1994, and even if the statute of limitations began running at that time, he suffered entirely new losses in 1996 and 1998 and these "new and separate" losses served to "restart" the statute of limitations. However,

> The long-standing rule in California is that a single tort can be the foundation for but one claim for damages.... Accordingly, if the statute of limitations bars an action based upon harm immediately caused by defendant's undoing, a separate cause of action based on a subsequent harm arising from that wrongdoing would normally amount to splitting the action.

*Miller v. Lakeside Village Condominium Ass'n,* 1 Cal.App.4th 1611, 1622, 2 Cal. Rptr.2d 796 (1991) (citations omitted); *see also Bennett v. Shahhal,* 75 Cal.App.4th 384, 391–92, 89 Cal.Rptr.2d 272 (1999) (same). The cases cited by Plaintiff are (1) superseded by the California Supreme Court's decision in *Jordache Enterprises* and (2) distinguishable from this case because they involve unusual circumstances not present here. For example, in *Martinez–Ferrer v. Richardson–Merrell, Inc.,* 105 Cal.App.3d 316, 327, 164 Cal.Rptr. 591 (1980), the court permitted a man to sue a drug manufacturer for injuries he suffered (cataracts) sixteen years after taking a medication when he had previously suffered only slight injury of a different na-

---

9. The Court is not persuaded that the statute should commence running only after Plaintiff had actual knowledge that his accountant Raitz knew about and failed to disclose the asbestos problem. Plaintiff could have sued AY using the facts he did know and add as additional defendants fictitiously named defendants as is permitted under California law. *See* Cal.Code Civ.Proc. § 474. Later, as discovery progressed, he could have substituted the actual names of the Doe defendants.

ture because "it would be a miscarriage of justice not to permit plaintiff to go to trial."

Thus, the statutes of limitation on Plaintiff's claims, including his claim for breach of fiduciary duty, began to run at least by October 1994.[10] Thus, even if a breach of fiduciary duty claim has a four-year statute of limitation, the limitation period ended in October 1998. Plaintiff filed his complaint in January 1999. Accordingly, Plaintiff's claims against the non-diverse parties in this case are time-barred.

## IV. Conclusion

For all of the above reasons, the Court **DENIES** Plaintiff's Motion to Remand [Docket Nos. 37 & 40] on the grounds that a preponderance of the evidence shows that the non-diverse defendants are fraudulently joined sham defendants. The Court will disregard those defendants, EY–LLP and Pope, for purposes of determining diversity jurisdiction.[11]

Additionally, the Court will here address all of the remaining pending motions in this action:

1. On June 9, 1999, EYI filed a Motion to Dismiss Based on (1) Lack of Personal Jurisdiction and (2) Forum Non Conveniens [Docket No. 3]. EYI's motion addressed the First Amended Complaint, which was superseded by the Second Amended Complaint. Therefore, EYI's Motion to Dismiss based on (1) Lack of Personal Jurisdiction and (2) Forum Non Conveniens is **DENIED AS MOOT.**

2. Similarly, on July 2, 1999, Defendants EY–LLP and Pope filed a Motion to Dismiss the First Amended Complaint

Pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Their motion was directed at the First Amended Complaint, and there is no pending motion to dismiss the Second Amended Complaint. Therefore, EY–LLP and Pope's Motion to Dismiss the First Amended Complaint is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

---

**10.** In theory, the statute of limitations as to a specific defendant could begin to run after October 1994 if that defendant became involved after that date. However, Plaintiff's own SAC treats defendants EY–LLP and Pope as the same. *See* SAC at ¶¶ 3–4 (asserting that EY–LLP "at all times material hereto was, a member of" EYI and that Pope "at all times material hereto was a partner, member, employee and/or agent of" EY–LLP and/or EYI). Thus, Plaintiff does not attempt to distinguish between the defendants for statute of limitations purposes.

**11.** EY–LLP and Pope argue in a supplemental brief that, if the Court finds they are sham defendants, the Court should dismiss them rather than disregard them. They express concern that there will be uncertainty in the record. However, EY–LLP and Pope will be free to file renewed motions to dismiss on statute of limitations or other grounds to resolve any uncertainty in the record. The Court finds disregarding EY–LLP and Pope to be the legally correct approach in the context of Plaintiff's Motion for Remand.